IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Jerry Marvin Galbreath, #131740, | ) | C/A No.: 1:14-110-RMG-SVH |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| Larry Cartledge, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Petitioner Jerry Marvin Galbreath is an inmate at the Tyger River Correctional Institution of the South Carolina Department of Corrections who filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civ. Rule 73.02(B)(2)(c) (D.S.C.) for a Report and Recommendation on Respondent's return and motion for summary judgment. [ECF Nos. 16, 17, 20]. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Petitioner of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to Respondent's motion by June 2, 2014. [ECF No. 18]. The court granted extensions to September 2, 2014. [ECF No. 23]. Petitioner filed a response on August 28, 2014. [ECF No. 25]. The matter having been fully briefed, it is ripe for disposition. Having carefully considered the parties' submissions and the record in this case, the undersigned recommends that Respondent's motion for summary judgment be granted.

I.      Factual and Procedural Background

The South Carolina Court of Appeals ("Court of Appeals") summarized the facts

of this case as follows:

> On the evening of December 27, 2002, Galbreath and his roommate, Johnny Dillard, partied with the victim, Shawn Bates, and the victim's girlfriend, Pamela Ayers. Both Ayers and Dillard testified that Galbreath and Bates huffed paint, smoked marijuana, and drank alcohol while the four of them drove to a bar. While Bates was in the bar, Galbreath repeatedly told Ayers that he was going to "rape her" and kill Bates.
>
> Ayers told Bates that Galbreath was harassing her. When the four returned to the car, Bates and Galbreath began fighting, and Galbreath sustained minor cuts and bruises. Ayers testified the fight began because Bates threatened to take Galbreath's car, to which Galbreath replied Bates would be a "dead man" and "die that night" if he tried. Dillard, who was driving the vehicle, pulled over and ordered Bates and Ayers out of the vehicle. Once Dillard and Galbreath arrived back at Galbreath's home, Dillard parked the car in the garage, and the men went inside. Dillard testified that they continued drinking. At one point Galbreath told Dillard, "I will get the little fucker for busting my eyes. I will get even with the bastard."
>
> After being dropped off, Bates and Ayers went to the home of Lynn Davis, who lived near the location where Dillard had left the couple. Bates requested Lynn Davis take him to Galbreath's home so he could retrieve a baseball cap that he had left in the car. Davis, accompanied by her friend, Kimberly Skinner, and Ayers, drove Bates to Galbreath's home. Although Ayers, Davis, and Skinner testified that Bates seemed calm on the way to Galbreath's house, Ayers admitted that he was angry because he did not have his hat.
>
> After arriving at Galbreath's residence, Bates tried to open the garage door but could not. He hit the garage door with a brick and smeared leaves onto the door. He also leaned a ladder against the house, but he did not attempt to use the ladder for any purpose. Frustrated, Bates returned to Davis's vehicle, and Davis backed out of the driveway. As the vehicle was leaving the driveway, Galbreath's porch light came on, and Bates told Davis to stop the car. Bates exited the vehicle and walked toward the house with "his arms out with his hands spread." Ayers, Davis, and Skinner heard a gunshot. Bates then returned to the vehicle where he stated Galbreath had shot him. Ayers saw Galbreath close the glass door. Davis drove away from

2

Galbreath's residence, and an ambulance was called, but Bates did not survive.

Dillard testified that he awoke around midnight because he heard knocking or banging on the house. He could also hear Bates outside yelling about wanting his belongings from the car. Dillard returned to bed once the knocking stopped, but woke again moments later when he heard Galbreath and Bates cursing at each other. Dillard then heard a gun shot, whereupon he arose from bed and found Galbreath holding a .22 rifle out the open doorway. Dillard claimed Galbreath told him that he shot Bates, but "wished [Bates] would have tried to break in."

Neither Galbreath nor Dillard called 911. According to Dillard, Galbreath listened to his police scanner before going to bed.

The police arrested Galbreath the following morning, on December 28, 2002.

[ECF No. 20-3 at 2–3].

Petitioner was indicted by the Oconee County Grand Jury during the April 2003 term of court for murder (2003-GS-37-386) and possession of a firearm during the commission of a violent crime (2003-GS-37-387) ("gun charge"). [ECF No. 16-8 at 8–11]. Attorney N. Gruber Sires, Jr., represented Petitioner at a jury trial on May 27–29, 2003, before the Honorable Alexander S. Macaulay, Circuit Court Judge. [ECF No. 16-1 at 4 *et seq.*]. The jury found Petitioner guilty as charged, [ECF No. 16-5 at 97], and Judge Macaulay sentenced Petitioner to concurrent terms of 30 years for murder and 5 years for the gun charge [ECF No. 16-6 at 1–2].

Petitioner appealed his convictions and sentences to the Court of Appeals and on appeal Petitioner was represented by Robert M. Dudek, Esq., Assistant Appellate Defender, of the South Carolina Office of Appellate Defense.  Attorney Dudek filed a merits brief raising the following issues:

3

1.  Whether the court erred by refusing to direct a verdict on the charge of murder where it was undisputed that the aggressive decedent came to appellant's home, began damaging the structure of appellant's house from outside, and was advancing towards appellant after appellant opened the door since the shooting was not murder under these circumstances and appellant was entitled to an order of acquittal pursuant to State v. Hendrix and in defense of habitation?

2.  Whether the court erred by allowing Officer Tim Chastain to testify as a reply witness about appellant's guarded statement to the police where appellant did not make that statement an issue, and where the state did not introduce the statement during its case-in-chief, since this was prejudicial improper reply testimony?

[ECF No. 20-1 at 4]. On May 23, 2005, the Court of Appeals filed an unpublished decision affirming the convictions. [ECF No. 20-3]. On October 20, 2015, the Court of Appeals denied Petitioner's request for rehearing [ECF Nos. 20-4; 20-5]. On January 20, 2006, Attorney Dudek filed a petition for writ of certiorari, raising the following issues:

1.  Whether the Court of Appeals erred by holding petitioner was not entitled to a directed verdict on the charge of murder where it was undisputed that the aggressive decedent came to petitioner's home, began damaging the structure of petitioner's house from outside, and was advancing towards petitioner after petitioner opened the door, where petitioner had the right to act on appearances, since the shooting was not murder under these circumstances and petitioner was entitled to an order of acquittal pursuant to State v. Hendrix, and in defense of habitation?

2.  Whether the Court of Appeals erred by holding it was proper for Officer Tim Chastain to testify as a reply witness about petitioner's guarded statement to the police where petitioner did not make that statement an issue, and where the state did not introduce the statement during its case-in-chief, since this was improper and highly prejudicial reply testimony which only sought to gain a strategic advantage for the state by having the last word?

[ECF No. 20-6 at 4]. On February 14, 2007, the South Carolina Supreme Court denied certiorari. [ECF No. 20-8]. The remittitur was issued on February 16, 2007. [ECF No. 20-9].

On March 5, 2007, Petitioner filed an application for post-conviction relief ("PCR"), raising claims of ineffective assistance of counsel, prosecutorial misconduct, and judicial abuse of discretion. [ECF No. 16-6 at 4–13]. On November 13, 2007, a PCR evidentiary hearing was held before the Honorable John C. Hayes, III, Circuit Court Judge, at which Petitioner and his counsel, R. Daniel Day, Esq., appeared. *Id.* at 18–90. On December 4, 2007, Judge Hayes filed an order of dismissal. [ECF Nos. 16-6 at 98–102 − 16-7 at 1–2].

On December 17, 2007, Petitioner filed a pro se Rule 59(e), SCRCP, motion to alter or amend the order of dismissal. [ECF No. 16-7 at 4–6].[1]  Petitioner also filed a pro se notice of appeal on December 17, 2007 [*Id.* at 7–12], which the South Carolina Supreme Court dismissed on January 29, 2008. [*Id.* at 23–24]. Petitioner filed a pro se request for relief pursuant to *Austin v. State*, 409 S.E.2d 395 (S.C. 1991), which the South Carolina Supreme Court denied on February 8, 2008. *Id.* at 25–26.  Petitioner filed a pro se petition to reinstate his appeal, which the South Carolina Supreme Court denied on March 6, 2008. *Id.* at 28–29. The remittitur was issued on March 6, 2008. *Id.* at 30.

Petitioner filed a second PCR application on March 24, 2008, alleging ineffective assistance of PCR counsel for failing to file a notice of appeal. [ECF No. 16-7 at 31–38].

---

[1] Petitioner's motion to alter or amend was denied by Judge Hayes on February 5, 2008, finding that the Circuit Court was divested of jurisdiction in Petitioner's case when Petitioner filed an appeal. [ECF No. 16-7 at 27].

Petitioner filed amendments to his PCR application on April 11, 2008, and April 24, 2008. *Id.* at 39–45.

Petitioner filed a third PCR application on February 28, 2009. [ECF No. 16-7 at 60–68]. Upon the state's motion [ECF No. 16-7 at 69–71], the Honorable J. Cordell Maddox, Jr., Circuit Court Judge, issued an order merging Petitioner's second and third PCR applications into one action on August 11, 2009. [ECF No. 20-16].  Petitioner appealed the order merging his PCR applications to the South Carolina Supreme Court, which dismissed the appeal on October 13, 2009. [ECF No. 16-7 at 72–73]. The remittitur was issued on October 29, 2009. *Id.* at 74.

On May 11, 2010, Petitioner filed "amendments and clarifications" to his PCR application, alleging ineffective assistance of PCR counsel and citing new case law. *Id.* at 45–49. On June 14, 2010, a PCR evidentiary hearing was held before the Honorable R. Lawton McIntosh, Circuit Court Judge, at which Petitioner and his counsel, Jeremy S. Poindexter, Esq., appeared. *Id.* at 77–97. On October 1, 2010, Judge McIntosh filed an order finding that Petitioner was entitled to a belated appeal from the denial of his first PCR application pursuant to *Austin v. State*, 409 S.E.2d 395 (S.C. 1991), and denying relief on Petitioner's remaining PCR grounds. *Id.* at 99–103. Petitioner filed a motion for reconsideration on October 4, 2010.  *Id.* at 104–105.

On November 10, 2011, Petitioner filed a motion to stay his *Austin v. State* appeal, asking the South Carolina Supreme Court to remand his case to Judge Hayes to rule on Petitioner's motion to alter or amend the order dated November 29, 2007, denying his

6

first PCR application. [ECF No. 20-18 at 1–3]. On December 15, 2011, the South Carolina Supreme Court denied Petitioner's motion to stay. [ECF No. 16-8 at 67].

Petitioner timely filed a notice of appeal and was represented by Appellate Defender Lanelle Cantey Durant of the South Carolina Commission on Indigent Defense, Division of Appellate Defense, who filed a petition for a writ of certiorari in the South Carolina Supreme Court on March 19, 2012, raising the following issue: "Whether the PCR court was correct in ruling that petitioner was entitled to a belated appeal from the denial of his first PCR as his first PCR attorney failed to file an appeal after petitioner requested one?" [ECF No. 20-19 at 3].

Simultaneously, Attorney Durant filed a *Johnson* petition[2] for writ of certiorari in the South Carolina Supreme Court pursuant to *Austin v. State*, 409 S.E.2d 395 (S.C. 1991), and petitioned to be relieved as counsel. [ECF No. 20-20]. The petition raised the following issues:

> 1. Did the PCR court err in failing to find trial counsel ineffective for not informing Petitioner that counsel had represented the victim of the alleged murder on a prior resisting arrest charge, as well as the victim's mother in a separate legal proceeding which was prejudicial to Petitioner because counsel would not call the victim's mother, Ms. Bates, to testify at petitioner's trial?

---

[2] *Johnson v. State*, 364 S.E.2d 201 (S.C. 1988) (applying the factors of *Anders v. California*, 386 U.S. 738 (1967), to post-conviction appeals). *Anders* requires that counsel who seeks to withdraw after finding the "case to be wholly frivolous" following a "conscientious examination" must submit a brief referencing anything in the record that arguably could support an appeal, furnish a copy of that brief to the defendant, and after providing the defendant with an opportunity to respond, the reviewing court must conduct a full examination of the proceedings to determine if further review is merited. *Anders*, 386 U.S. at 744.

2.  Did the PCR court err in failing to find trial counsel ineffective for not objecting to the solicitor's asking Petitioner on cross-examination if he told the victim's girlfriend that he was going to rape her which was not relevant and was prejudicial?

3.  Did the PCR court err in failing to find trial counsel ineffective for not objecting to the jury charge that the jury could infer malice when the deed is done with a deadly weapon?

*Id.* at 3.

On April 9, 2012, Petitioner filed a pro se brief in which he raised the following issues:

1.      Did PCR court err in failing to find trial counsel ineffective for not objecting to the jury charge of inferred malice if the deed was done with a deadly weapon?
        (a) Should petitioner be included in the Belcher v. State Ruling: Opinion No. 26729?

2.      Did PCR court err in failing to find trial counsel ineffective for not objecting to petitioner's silence being used against him by prosecutor to imply guilt and to imply he was lieing?

3.      Did PCR court err in failing to find trial counsel ineffective for not objecting to prosecutor vouching for the credibility of her witnesses?

4.      Did PCR court err in saying petitioner abandoned the issue of a "King" charge to the jury? And did he err in not finding trial counsel ineffective for not asking for the charge to the jury?

5.      Did PCR court err in failing to find trial counsel ineffective for not asking for a Jackson v. Denno hearing before states rebuttal witness Officer Chastain?

6.      Did PCR court err in failing to find trial counsel ineffective for not asking for a jury charge of "necessity of a weapon" to the jury?

7.      Did PCR judge err in not finding trial attorney ineffective for not objecting to prosecutor's misconduct by asking petitioner if he said the decease's mother had "good pussy" in which was not relevant had no

probative value and highly prejudicial. She use this to clearly inflame the
jury against petitioner.

[ECF Nos. 20-21 at 3–4]. On May 15, 2012, Petitioner filed an amendment on his first
issue of inferred malice, alleging non-application of *Belcher* to his PCR violates the ex
post facto clause. [ECF No. 20-22].

On July 24, 2012, Petitioner's appeal was transferred to the Court of Appeals.
[ECF No. 20-23]. On. November 7, 2013, the Court of Appeals issued an order: (1)
granting the petition for writ of certiorari from Judge McIntosh's order and conducting an
*Austin* review of Judge Hayes's order; (2) denying the petition for writ of certiorari from
Judge Hayes's order and granting counsel's petition to be relieved. [ECF No. 20-24].
The remittitur was issued on November 26, 2013. [ECF No. 20-25].[3]

Petitioner filed this petition for writ of habeas corpus on January 9, 2014. [ECF
No. 1-4 at 2].[4]

II.    Discussion

A.    Federal Habeas Issues

Petitioner now asserts he is entitled to a writ of habeas corpus on the following
claims:

**Ground One:**    Whether Court of Appeals erred by holding I was not entitled to a

---

[3] Petitioner filed an untimely pro se motion for reconsideration on November 27, 2013,
[ECF No. 20-26], which the court denied on December 2, 2013. [ECF No. 20-27].

[4] The petition was received by the court on January 13, 2014, and docketed on January
14, 2014, 2014. [ECF No. 1]. However, because Petitioner is incarcerated, he benefits
from the "prison mailbox rule." *Houston v. Lack*, 487 U.S. 266 (1988). The envelope
containing the petition was deposited in the prison mailing system on January 9, 2014.
[ECF No. 1-4 at 2].

directed verdict of self defense.

Supporting Facts: The decedent after attacking me earlier came to my home and tried to get in. After knock holes in my house and saying he was going to kill me, I open the door and he started toward me and I shot. My home and me was under attack.

**Ground Two:**    Contrary to State and Federal Laws: Whether the Court of Appeals erred that it was proper for a reply witness to testify at end of trial.

Supporting Facts:  The court allowed Officer Chastain to testify on petitioners guarded statement to police where petitioner did not make statement an issue. It was improper and highly prejudicial.

**Ground Three:**    Contrary to State and Federal Laws: Whether the Court of Appeals erred by not finding trial council ineffective for not objecting to inferred malice instruction.

Supporting Facts:  Judge gave a jury instruction of inferred malice if a gun was used. By doing so it did away with self-defense and lessor charge of manslaughter.

**Ground Four:**    Contrary to State and Federal Laws: Whether Court of Appeals erred by not finding trial counsel ineffective for not objecting to prosecutor using my silence againt me.

Supporting Facts: When I took the stand the prosecutor used my silence after being given my Miranda warnings to infer to the jury I was lying because I chose to wait until I talk to an attorney. I told my story for the first time at trial. Prosecutor did this 22 times.

**Ground Five:**    Whether Court of Appeals was contrary to state and federal laws by not finding trial attorney ineffective for not asking for the jury charge of King vs State?

Supporting Facts:  Trial attorney never ask for a jury charge if you have any reasonable doubt between a greater or lessor offense you have to resolve in favor of the defendant.

**Ground Six:**    Whether the Court of Appeals was contrary to state and federal laws by not find trial attorney ineffective for not asking for (Jackson v. Denno) hearing before the state introduce a rebuttal witness at the

end of trial.

Supporting Facts:    The hearing would of shown the state had no signed statement, no recording of conversation and no one present during interrogation. All he could of testified to was what he thought was said.

**Ground Seven:**    Was Court of Appeals contrary to state and federal laws for not finding trial attorney ineffective for not objecting to solicitors asking petitioner on cross if he told the decease's girlfriend that he told her he was going to rape her.

Supporting Facts:  Solicitors question was highly prejudicial and was not relevant to trial. PCR judge said the sexual comment did not appear relevant and was perhaps prejudicial and subject to objection. The trial judge ruled trial counsel's decision not to object to any solicitor's comments was a strategic decision.

**Ground Eight:**    Was Court of Appeals contrary to state and federal laws for not finding trial counsel ineffective for not telling petitioner he had represented the decease and his mother in separate legal proceedings.

Supporting Facts:  Trial Counsel represented the decease and his mother in criminal proceedings. Petitioner's trial judge heard all the proceedings. The mother 2 weeks before counsel took petitioner's case. Petitioner was never informed. Petitioner feels this was a conflict he should have been told and gave the opportunity to get another counsel. He was never told!

**Ground Nine:**    Was Court of Appeals contrary to state and federal laws for not finding trial attorney ineffective for not asking for a necessity of a weapon charge to the jury.

Supporting Facts:  Since self-defense and defense of habitation was introduced to the jury. Evidence showed his home and petitioner was under attack. Petitioner had every right to arm himself and protect his home and himself.

**Ground Ten:**    Was Court of Appeals contrary to state and federal laws for not finding trial attorney ineffective for not objecting to prosecutors vouching for the credibility of her witnesses?

Supporting Facts:  The prosecutor keep vouching for her witnesses and trial attorney never objected giving the jury her and the states assurance that what they said was true and what I said was a lie.

[ECF Nos. 1 at 5–10;  1-2 at 5–11] (errors in original).

B.    Standard for Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*  At the summary judgment stage, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor.  *Id.* at 255.  However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e).

C.    Habeas Corpus Standard of Review

1.    Generally

Because Petitioner filed his petition after the effective date of the AEDPA, review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable application of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)(2); *see Williams v. Taylor*, 529 U.S. 362, 398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411.  Moreover, state court factual determinations are presumed to be correct and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

2.    Procedural Bar

Federal law establishes this court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254.  This statute permits relief when a person "is in custody in violation of the

Constitution or laws or treaties of the United States[,]" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. *Id.* The separate but related theories of exhaustion and procedural bypass operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts. A habeas corpus petition filed in this court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

a.    Exhaustion

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

(b)     (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that—

(A)    the applicant has exhausted the remedies available in the courts of the State; or

(B)     (i) there is an absence of available State corrective process; or
(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c)     An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he

14

has the right under the law of the State to raise, by any available procedure,
the question presented.

28 U.S.C. § 2254.

The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. 28 U.S.C. § 2254(b)(1)(A). In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for PCR. State law requires that all grounds be stated in the direct appeal or PCR application. Rule 203 SCACR; S.C. Code Ann. § 17-27-10, et seq.; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767 (S.C. 1976). If the PCR court fails to address a claim as is required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP.  Failure to do so will result in the application of a procedural bar by the South Carolina Supreme Court. *Marlar v. State*, 653 S.E.2d 266 (S.C. 2007).[5]  Furthermore, strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina courts. A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

The United States Supreme Court has held that "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete

---

[5] In *Bostick v. Stevenson*, 589 F.3d 160, 162–65 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007, decision in *Marlar*, South Carolina courts had not been uniformly and strictly enforcing the failure to file a motion pursuant to Rule 59(e), SCRCP, as a procedural bar.  Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

round of the State's established appellate review process"—which includes "petitions for discretionary review when that review is part of the ordinary appellate review procedure in the State." *O'Sullivan v. Boerckel,* 526 U.S. 838, 845 (1999). This opportunity must be given by fairly presenting to the state court "both the operative facts and the controlling legal principles" associated with each claim. *Baker v. Corcoran,* 220 F.3d 276, 289 (4th Cir. 2000) (citing *Matthews v. Evatt,* 105 F.3d 907, 911 (4th Cir. 1997) (internal quotation marks omitted)). That is to say, the ground must "be presented face-up and squarely." *Mallory v. Smith*, 27 F.3d 991, 995 (4th Cir. 1994) (citation and internal quotation marks omitted).

The South Carolina Supreme Court has held that the presentation of claims to the state court of appeals without more is sufficient to exhaust state remedies for federal habeas corpus review. *State v. McKennedy,* 559 S.E.2d 850 (S.C. 2002); *see also In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases,* 471 S.E.2d 454 (S.C. 1990). The *McKennedy* court held that *In re Exhaustion* had placed discretionary review by the South Carolina Supreme Court *"*outside of South Carolina's ordinary appellate review procedure pursuant to *O'Sullivan*." 559 S.E.2d at 854. As such, it is an "extraordinary" remedy under *O'Sullivan*, "technically available to the litigant but not required to be exhausted," *Adams v. Holland*, 330 F.3d 398, 403 (6th Cir. 2003).

Because the South Carolina Supreme Court has held that presentation of certain claims to the South Carolina Court of Appeals without more is sufficient to exhaust state remedies, a claim is not procedurally barred from review in this court for failure to pursue

16

review in the South Carolina Supreme Court after an adverse decision in the South Carolina Court of Appeals.

### b.    Procedural Bypass

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner who seeks habeas corpus relief as to an issue failed to raise that issue at the appropriate time in state court and has no further means of bringing that issue before the state courts. In such a situation, the person has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. Procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings if the state has procedural rules that bar its courts from considering claims not raised in a timely fashion.

The South Carolina Supreme Court will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. As the Supreme Court explains:

> . . . [state procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed v. Ross*, 468 U.S. 1, 10–11 (1984).

17

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule[,]" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith v. Murray*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986), *superseded by statute on other grounds* (AEDPA).

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. A federal court is barred from considering the filed claim (absent a showing of cause and actual prejudice). In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply. *See Matthews v. Evatt*, 105 F.3d at 915 (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991); *Teague v. Lane*, 489 U.S. 288, 297–98 (1989); *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996); *Bassette v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990)).

### 3.    Cause and Actual Prejudice

Because the requirement of exhaustion is not jurisdictional, this court may consider claims that have not been presented to the states courts in limited circumstances in which a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or that a "fundamental

miscarriage of justice" has occurred. *Murray*, 477 U.S. at 495–96. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Id.* Absent a showing of "cause," the court is not required to consider "actual prejudice." *Turner v. Jabe*, 58 F.3d 924 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error.

4.    Ineffective Assistance of Counsel Claims

To prevail on his ineffective assistance of counsel claims, Petitioner must show (1) that his trial counsel's performance fell below an objective standard of reasonableness, and (2) that a reasonable probability exists that but for counsel's error, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 694 (1984). The court must apply a "strong presumption" that trial counsel's representation fell within the "wide range of reasonable professional assistance," and the errors must be "so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Harrington v. Richter*, 131 S.Ct. 770, 787 (2011). This is a high standard that requires a habeas petitioner to show that counsel's errors deprived him "of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. That the outcome would "reasonably likely" have been different but for counsel's error is not dispositive of the prejudice inquiry. Rather, the court must determine whether the result of the proceeding was fundamentally unfair or unreliable. *Harrington*, 131 S.Ct. at 787–88;

*Strickland*, 466 U.S. at 694.

The United States Supreme Court has cautioned that "'[s]urmounting Strickland's high bar is never an easy task[,]' . . . [e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult." *Harrington*, 131 S.Ct. at 788 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)). When evaluating an ineffective assistance of counsel claim, the petitioner must satisfy the highly deferential standards of 28 U.S.C. § 2254(d) and *Strickland* "in tandem," making the standard "doubly" more difficult. *Harrington*, 131 S.Ct. at 788. In such circumstances, the "question is not whether counsel's actions were reasonable," but whether "there is any reasonable argument that counsel satisfied Strickland's deferential standards." *Id.* The unreasonableness of the state court determination must be "beyond any possibility of fairminded disagreement." *Id.* at 787. "If this standard is difficult to meet, that is because it was meant to be." *Id.* at 786. Section 2254(d) codifies the view that habeas corpus is a "'guard against extreme malfunctions in the state criminal justice system,' not a substitute for ordinary error correction through appeal." *Id.*, quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n. 5 (1979)).

D.     Analysis

1.     Merits Review

a)     Alleged Trial Court Errors

(1)     Ground One

Petitioner argues that the trial judge erred by denying his motion for a directed verdict because the evidence showed that he acted in self-defense as a matter of law. [ECF No. 1 at 5].

On direct appeal, the South Carolina Supreme Court denied Petitioner's claim that the trial court should have directed a verdict of acquittal because he was acting in self-defense and in defense of habitation. [ECF No. 20-3 at 4]. The Court held:

> When ruling on a motion for a directed verdict in a criminal case, the trial court is concerned with the existence or non existence of evidence, not its weight. State v. Morgan, 282 S.C. 409, 411, 319 S.E.2d 335, 336 (1984). In reviewing the denial of a motion for a directed verdict, the evidence is viewed in the light most favorable to the State. State v. Fennell, 340 S.C. 266, 270, 531 S.E.2d 512, 514 (2000). If there is any direct evidence or substantial circumstantial evidence reasonably tending to prove the guilt of the accused, we must find the case was properly submitted to the jury. State v. Pinckney, 339 S.C. 346, 349, 529 S.E.2d 526, 527 (2000). "A defendant is entitled to a directed verdict when the State fails to produce evidence of the offense charged." State v. McHoney, 344 S.C. 85, 97, 544 S.E.2d 30, 36 (2001). Thus, in the present case, unless it can be said as a matter of law that self-defense or defense of habitation was established, it was not error to submit the case to the jury.

> In order to establish that a crime was committed in self-defense, a defendant must show:

> > (1) he was without fault in bringing on the difficulty;
> > (2) he actually believed he was in imminent danger of losing his life or of sustaining serious bodily injury;
> > (3) a reasonably prudent person of ordinary firmness and courage would  have entertained the same belief;

> (4) he had no other probable means of avoiding the danger.
>
> State v. Long, 325 S.C. 59, 62, 480 S.E.2d 62, 63 (1997). Defense of habitation is analogous to self-defense, except that "a person attacked on his own premises, without fault, has the right to claim immunity from the law of retreat." Id. However, as with self-defense, the defendant's subjective belief of imminent danger must be reasonable. State v. Lee, 293 S.C. 536, 537, 362 S.E.2d 24, 25 (1987).
>
> Here, the trial court properly submitted the case to the jury because there was evidence that Galbreath did not believe he was in imminent danger of losing life or sustaining serious bodily injury. Dillard, Ayers, and Davis testified that Bates was unarmed. Furthermore, Ayers and Davis stated that Bates approached Galbreath's house with "his arms out with his hands spread," making the fact that Bates did not have a weapon evident. Dillard testified that Galbreath declared, after the shooting, that he "wished [Bates] would have tried to break in," which provides some evidence that Galbreath did not believe Bates was trying to break into his home. Therefore, we find the State presented enough evidence to survive a directed verdict motion.

[ECF No. 20-3 at 4–5].

Petitioner's challenge to the trial court's failure to direct a verdict of acquittal goes to the sufficiency of the evidence. Such a claim may be considered by courts on collateral review, but the federal court's review of such claim is "sharply limited." *Wilson v. Greene,* 155 F.3d 396, 405 (4th Cir. 1998) (citing *Wright v. West*, 505 U.S. 277, 296 (1992)). "Federal review of the sufficiency of the evidence to support a [petitioner's] state court conviction is not meant to consider anew the jury's guilt determination or to replace the state's system of direct appellate review." *Wilson,* 155 F.3d 405–06 (citing *Wright,* 505 U.S. at 292). Therefore, a defendant is entitled to review only if "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979) (footnote omitted); *see also George v. Angelone*, 100 F.3d 353, 357 (4th Cir. 1996).

22

Under South Carolina law, "'murder' is a killing of any person with malice aforethought, either expressed or implied." S.C. Code Ann. § 16-3-10 (Supp. 2013). *See also State v. Judge*, 38 S.E.2d 715 (1946). To establish self-defense, there must be evidence to establish the following:

> (1) The defendant must be without fault in bringing on the difficulty; (2) the defendant must have actually believed he was in imminent danger of losing his life of sustaining serious bodily injury, or he actually was in such imminent danger; (3) if his defense is based upon his belief of imminent danger, a reasonably prudent man of ordinary firmness and courage would have entertained the same belief; if the defendant actually was in imminent danger, the circumstances were such as would warrant a man of ordinary prudence and courage to strike the fatal blow to save himself from serious bodily harm or losing his own life; and (4) the defendant had no other probable means of avoiding the danger of losing on his own life or sustaining serious bodily injury than to act as he did in this particular instance.

*State v. Goodson*, 440 S.E.2d 370, 372 (S.C. 1994). Defense of habitation is analogous to self-defense. *State v. Lee*, 362 S.E.2d 24, 25 (S.C. 1987). A defendant acts in defense of habitation when he defends himself from imminent attack on his own premises. *Id.* at 25. As with self-defense, the defendant's subjective belief of imminent danger must be reasonable. *Id.*

The court's review of the record reveals that Petitioner was not entitled to a directed verdict on the murder charge against him because there was more than sufficient evidence before the trial court to submit to the jury the question of whether Petitioner was acting in self-defense. Specifically, there was evidence that Bates was unarmed, approximately 20 feet from Petitioner's house, with his arms out and hands spread, when Petitioner shot him. There was also evidence that Petitioner stated before the shooting

that he was going to get even with Bates for their earlier fight, and that after the shooting he stated that he wished that Bates had tried to break into his house.

The court has considered Petitioner's response in which he identifies portions of his own testimony to contradict the above-referenced evidence. [ECF No. 25-3]. However, Petitioner's submission highlights the presence of disputed factual issues for a jury to consider and weigh in reaching its verdict. The undersigned finds that the trial court properly refused to direct a verdict. Petitioner has not satisfied his burden of proof under 28 U.S.C. § 2254 and *Jackson v. Virginia*, 443 U.S. at 324.

Further, Petitioner has failed to present evidence sufficient to show that the state courts' rejection of this claim was contrary to, or involved an unreasonable application of, clearly established federal law or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Bell v. Jarvis*, 236 F.3d 149, 157–58 (4th Cir. 2000); 28 U.S.C. § 2254(e)(1). The undersigned recommends that Respondent's motion for summary judgment be granted on Ground One.

(2)    Ground Two

Petitioner argues that the trial judge erred in allowing a reply witness to testify at the end of his trial about his guarded statement to police when Petitioner did not make the statement an issue. [ECF No. 1 at 6].

On direct appeal, the South Carolina Supreme Court denied Petitioner's claim that the trial court erred in allowing Officer Chastain's testimony as rebuttal evidence because

24

the State elicited the statement during cross-examination. [ECF No. 20-3 at 5]. The court

held:

> When the defendant has completed his case, the prosecuting party may
> offer evidence in reply. McGaha v. Mosley, 283 S.C. 268, 276, 322 S.E.2d
> 461, 466 (Ct. App. 1984). "The admission of reply testimony is within the
> sound discretion of the trial judge, and there is no abuse of discretion if the
> testimony is arguably contradictory of and in reply to earlier testimony."
> State v. Todd, 290 S.C. 212, 214, 349 S.E.2d 339, 340 (1986). Reply
> testimony can also be used to clarify matters that were confused during the
> defendant's case, to rebut an affirmative defense raised during the
> defendant's case, and most importantly in this case, to complete the
> impeachment of a defense witness. See, e.g., State v. Van Williams, 212
> S.C. 110, 113, 46 S.E.2d 665, 666-67 (1948); Ford v. A.A.A. Highway
> Express, 204 S.C. 433, 441-42, 29 S.E.2d 760, 763-64 (1944) (holding
> plaintiff was on notice that rebuttal evidence may be offered when cross-
> examination of plaintiffs witness elicited contradictory evidence).

> During his testimony, Galbreath stated he heard a "big crash" when Bates
> threw objects against the garage door. He also heard Bates screaming "like
> an animal." He testified he was afraid for his life because he heard Bates
> say, "I'll kill you old man." Most importantly, Galbreath testified that Bates
> had a knife when Dillard kicked him and Ayers out of the vehicle. He also
> testified that he was "sorry about the boy."

> However, during cross-examination, the State presented the statement
> Galbreath made to Officer Chastain, which detailed many of the events of
> December 27–28, 2000, including Bates's threats and the fight in the car. In
> this statement, Galbreath failed to mention that he felt his life was in danger
> or that Bates was screaming and throwing objects against the garage door.
> Galbreath also neglected to mention to Officer Chastain, whom he knew
> well, that Bates had been armed with a knife earlier in the evening.
> Furthermore, in contrast to what Galbreath testified to at trial, in his
> statement to Officer Chastain, Galbreath said that he felt sorry for Bates's
> mother "for losing a kid, but he didn't feel bad for [Bates]."

> After the defense rested its case, the State called Officer Chastain to rebut
> Galbreath's testimony. Officer Chastain's testimony impeached Galbreath's
> trial testimony because Galbreath did not say the same things on the stand
> that he had said to Officer Chastain regarding the incident. Therefore, the
> trial court did not abuse its discretion in allowing the rebuttal testimony.
> See Todd, 290 S.C. at 214, 349 S.E.2d at 340 (finding reply testimony was

admissible where witness's testimony contradicted part of defendant's testimony).

*Id.* at 6.

Respondent argues that Petitioner's Ground Two does not state a claim cognizable in federal habeas corpus because it concerns whether the trial judge erroneously applied South Carolina law. [ECF No. 16 at 45]. The undersigned agrees. A challenge to the application of state law is not cognizable in a federal habeas action. *See Estelle v. McGuire,* 502 U.S. at 67–68 ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.' . . . Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.") (citations omitted).  The undersigned recommends that Respondent be granted summary judgment on Petitioner's Ground Two.

> b)    Ineffective Assistance of Counsel Claims

> (1)    Jury Charges

> (a)    Ground Three

Petitioner argues that his trial counsel was ineffective in failing to object to the trial judge's jury charge that malice may be inferred when a gun is used. [ECF No. 1 at 8]. The trial judge gave the following jury instruction on implied or inferred malice:

> Malice aforethought may be expressed or inferred. And these terms expressed and inferred do not mean different kinds of malice, but merely the manner in which malice may be shown to exist; that is, either by the

direct evidence or by an inference from the facts and circumstances which are proved.

Expressed malice is shown when a person speaks words which express hatred or ill will for another, or when the person prepared beforehand to do an act which was later accomplished. For example, lying in wait for a person, or any other act of preparation, going to show that the deed was done within the defendant's mind would be expressed malice.

Malice may be inferred from conduct showing a total disregard for human life.

Inferred malice may also arise when the deed is done with a deadly weapon. A deadly weapon is an article, instrument or substance, which is likely to cause death or great bodily harm. Whether an instrument has been used as a deadly weapon depends on the facts and circumstances of each case.

The following are mere examples of instruments which may be deadly weapons: A pistol, a shotgun, a rifle, a dirk, a dagger, a knife, a slingshot, metal knuckles, a razor, gasoline, a firebomb or Molotov Cocktail, or even lighter fluid.

[ECF No. 16-5 at 79–80].

During the PCR hearing, Petitioner testified that his trial counsel was ineffective for failing to object to the inferred malice charge because the charge did away with manslaughter. [ECF No. 16-6 at 52]. Petitioner stated that he felt like the charge made it automatic that he had malice because he used a weapon. *Id*. at 53.   Petitioner argued that the South Carolina Supreme Court ruled against this charge. *Id.* at 53–54.

Petitioner's trial counsel testified that he believed the jury charges were proper. *Id.* at 71.

The PCR court found that there was no error in the trial judge's inference-of-malice charge. *Id.* at 102.

In his response, Petitioner argues that the rule announced in *State v. Belcher*, 685 S.E.2d 802 (S.C. 2009)[6], should be retroactively applied to his case. [ECF No. 25-5]. Petitioner claims that the *Belcher* rule was to be applied to all cases pending on direct review or not yet final where the issue was preserved. *Id.* at 1. Petitioner notes, however, that the South Carolina Supreme Court stated that the *Belcher* ruling will not apply to convictions challenged on PCR. *Id.*

Petitioner's direct appeal was finalized in February 2007, accordingly the rule announced in *Belcher* is inapplicable to Petitioner's case. *See Belcher*, 685 S.E.2d at 811 (holding that the *Belcher* decision applies to all cases which were pending on direct review or not yet final where the issue was preserved, but would not apply to convictions challenged on post-conviction relief). Accordingly, Petitioner cannot satisfy the *Strickland* test.

Further, the court cannot find that there was a substantial likelihood that the result of Petitioner's trial would have been different had the trial court not given the jury charge on implied malice. In light of the evidence of Petitioner's guilt of murder, including the evidence that Petitioner shot the victim while the victim was unarmed, standing 20 feet from Petitioner's house, with his arms out to the side and his fingers spread, the PCR court reasonably found that the trial court's jury instruction was not erroneous. Petitioner has failed to overcome the doubly-deferential standard of review accorded the state

---

[6] On October 12, 2009, the South Carolina Supreme Court held "a jury charge instructing that malice may be inferred from the use of a deadly weapon is no longer good law in South Carolina where evidence is presented that would reduce, mitigate, excuse or justify the homicide." *State v. Belcher,* 685 S.E.2d 802, 804 (S.C. 2009).

court's determination of this issue of ineffective assistance of counsel under *Harrington*. Petitioner has not shown that the state court's analysis of this issue misapplied clearly established federal law or, even if there was an error, that it was unreasonable. *See Williams*, 529 U.S. at 410. Based on the foregoing, Petitioner is not entitled to federal habeas relief on this claim, and the undersigned recommends that Respondent be granted summary judgment on Petitioner's Ground Three.

### (b)    Ground Five

Petitioner argues that his trial counsel was ineffective when he failed to ask the trial judge to give a *King*[7] charge that would inform the jury that if it had reasonable doubt between a greater and lesser offense, that it had to resolve the doubt in favor of the defendant. [ECF No. 1-2 at 5].

During the PCR hearing, Petitioner admitted that South Carolina trial courts were no longer required to give the whole *King* charge because the *King* charge had been overruled.[8]  [ECF No. 16-6 at 52]. Petitioner argues, however, that trial judges still charge the jury that it is supposed to give a defendant the benefit of the doubt if there is reasonable doubt between two pending charges. *Id.*

When asked about the *King* charge, trial counsel stated that he believed that "the [jury] charge that was given was complete and well done by the Judge." *Id.* at 74.

---

[7] *State v. King*, 155 S.E. 409 (S.C. 1930).

[8] In *Brightman v. State*, 520 S.E.2d 614, 615–16 (S.C. 1999), the South Carolina Supreme Court overruled the *King* charge finding it was unnecessary in light of the modern general reasonable doubt charge that instructs the jury to resolve doubts in favor of the defendant.

The PCR court found that Petitioner had abandoned his concern that no *King* charge was given. [ECF No. 16-6 at 102].

Petitioner acknowledged that the trial court was not required to give a *King* charge. Further, the court's review of the record reveals that the trial court's instructions included a reasonable doubt charge. [ECF No. 16-5 at 76–77, 82]. Under these circumstances, Petitioner has failed to meet his heavy burden to show that the trial court's failure to give a *King* jury instruction by itself so infected the entire trial that the resulting conviction violates due process. The state court decision denying relief was not contrary to and did not involve an established United States Supreme Court precedent. *See* 28 U.S.C. § 2254(d)(1). Therefore, the undersigned recommends that Ground Five be dismissed.

(c)    Ground Nine

Petitioner claims that his trial counsel was ineffective for failing to request a necessity of a weapon jury charge. [ECF No. 1-2 at 10].

During the PCR hearing, Petitioner testified that his trial counsel should have requested that the jury be charged that he had a right to use a weapon to defend himself and that his use of a weapon was not illegal. [ECF No. 16-6 at 56–57].

When questioned whether he requested that the trial judge give a charge regarding Petitioner's right to use a weapon, trial counsel testified that he believed "that comes under the defense of habitat and stuff that was given." *Id.* at 72.

The PCR court rejected Petitioner's allegation finding:

> Applicant claims Trial Counsel was ineffective for not asking for a charge or "necessity" and a "scipticism" (sic). The Court did not at the hearing nor does it now understand these claims. However, the latter is connected by Applicant to his interrogation. The Court has not been presented with any charge which Applicant claims should have been given. As is the case with witnesses, unless the Court is presented with evidence to support any claimed error, the claim must fail.

[ECF Nos. 16-6 at 102; 16-7 at 1].

Petitioner has not shown that the PCR court's decision was contrary to or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States or was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. *See Williams v. Taylor*, 529 U.S. at 399.  In his response, Petitioner argues that the result of his trial would have been different if his trial counsel had asked for the necessity of a weapon jury charge. [ECF No. 25 at 5]. However, a review of the jury charge given by the trial court shows that the trial judge gave the substance, if not the exact verbiage, of Petitioner's requested necessity of a weapon charge. *See* ECF No. 16-5 at 85–86. Petitioner has failed to demonstrate that his counsel's performance was deficient. The undersigned recommends that Ground Nine be dismissed.

### (2)    Improper Comments by Solicitor

#### (a)    Ground Four

Petitioner alleges that his trial counsel was ineffective for failing to object to the solicitor's use of Petitioner's post-*Miranda* silence, after he was given his *Miranda* warnings, to imply to the jury that he was lying.  [ECF No. 1-2 at 4].

Petitioner testified at the PCR hearing as follows:

She kept talking about me remaining silent. She kept saying that by me not telling the police what actually happened that night before I got to the trial that I was lying.

She kept saying over and over again that I was supposed to have told the jury — I mean, the police officers that night, and I kept telling her that I hadn't talked to a lawyer and I had already been charged with murder but she told it 23 times to the jury. She said that by me not being forth[right] with the policeman that night that I needed time to think it up.

She lead the jury to believe that I was lying when I took the stand because I hadn't told the police officers that night. That violated my 5th and 14th Amendment 21 times . . .

She continuously did this in front of the jury even in her closing arguments. And what this does, it was leading this jury to believe what I was saying was all lies. She even called me a liar through some of this.

There's no way that he shouldn't have objected to this because it was leading the jury to believe what I was saying was all fabricated, and I had a right that night when the police officers were talking to me not to say nothing because I was afraid because I had been charged with murder.

I didn't have to tell them what happened that night until I had talked to a lawyer, and she was leading the jury to believe that I was supposed to have been forthwith with them. That's not the way I should — I was fighting for my life again.

[ECF No. 16-6 at 45–46].

When asked why he did not object to the solicitor's closing statement, Petitioner's trial counsel testified that he did not think some of the statements were objectionable, and for others he did not want to "keep getting up and objecting" because he felt that the jury would think he was hiding something. [ECF No. 16-6 at 73]. Counsel stated that he did not believe that the solicitor unfairly commented on Petitioner's right to remain silent. *Id.*

The PCR judge stated that he reviewed the record and found that the solicitor's arguments did not rise to a level that would require objection by trial counsel. *Id.* at 102.

Petitioner's argument that his trial counsel was ineffective for failing to object to the solicitor using his post-*Miranda* silence against him is without merit. In *Doyle v. Ohio*, 426 U.S. 610 (1976), the Supreme Court held that it violates the privilege against self-incrimination for a prosecutor to cross-examine a defendant about his failure to talk to police after receiving his *Miranda* warnings. However, the Court further clarified that if a defendant chooses to speak after receiving *Miranda* warnings, the defendant may be impeached with the subject matter of his statement. *See Jenkins v. Anderson*, 447 U.S. 231 (1980) (holding that that it was not violative of the Constitution to use a defendant's pre-arrest silence to impeach a criminal defendant's credibility); *Anderson v. Charles*, 447 U.S. 404, 408 (1980) (ruling that *Doyle* did not apply in the context of questioning a defendant concerning prior inconsistent statements: "Such questioning makes no unfair use of silence because a defendant who voluntarily speaks after receiving *Miranda* warnings has not been induced to remain silent. As to the subject matter of his statements, the defendant has not remained silent at all.").

In this case, Petitioner did not remain silent after receiving *Miranda* warnings, choosing instead to answer questions and discuss specifics about his pending murder charge. Accordingly, Petitioner opened the door to trial commentary concerning the circumstances of his statement. *See* 447 U.S. at 408. Petitioner has not demonstrated he is entitled to relief on Ground Four, and the undersigned recommends summary judgment be granted as to this claim.

(b)    Ground Seven

Petitioner alleges that his trial counsel was ineffective for not objecting to the solicitor's questioning him about whether he told Bates's girlfriend that he was going to rape her. [ECF No. 1-2 at 7].

Trial counsel testified that he did not object to the line of questioning because he did not want the jury to think he was hiding something and stated that even if he had objected, his objection would not have eliminated Dillard's testimony. [ECF No. 16-6 at 72–74].

The PCR court denied this claim as follows:

> Applicant alleges that Trial Counsel should have objected when a statement he allegedly made as to a "Pam" was brought up by the Solicitor (TR p. 462, L 9 through p. 463 L 10). This line of question does not appear to be relevant, but is perhaps prejudicial and possibly subject to objection. However, the Court finds Trial Counsel's failure to object does not constitute error. Trial Counsel testified that he did not object to any of the Solicitor's comments for strategic reasons and to not appear that the defense was hiding something. The Court finds this to be a proper strategic approach. Cherry, 386 S.E.2d at 625.

[ECF No. 16-6 at 101].

The undersigned finds that trial counsel articulated valid strategic reasons for his decision not to object to the solicitor's comments. Courts are instructed not to second guess an attorney's trial strategy and tactics. *Stamper v. Muncie*, 944 F.2d 170 (4th Cir. 1991); *Goodson v. United States*, 564 F.2d 1071, 1072 (4th Cir. 1977). Counsel cannot be judged ineffective for performing in a particular way in a case, as long as the approach taken "might be considered sound trial strategy." *Darden v. Wainwright*, 477 U.S. 168, 169 (1986). The undersigned finds that the state court did not unreasonably apply the

34

mandates of *Strickland* in denying Petitioner's claim. Further, Petitioner failed to establish a reasonable probability that the trial would have been different if trial counsel had objected because the jury had already heard Petitioner's comments about Bates's girlfriend before Petitioner testified. The undersigned recommends that Petitioner's Ground Seven be dismissed.

(c)    Ground Ten

Petitioner alleges that his trial counsel was ineffective for not objecting when the solicitor improperly vouched for her witness. [ECF No. 1-2 at 11]. Petitioner identifies several excerpts from the trial transcript where he states that the solicitor improperly vouched for her witnesses and argues that his trial counsel's reasons for failing to object were highly unreasonable. [ECF No. 25-7].

When asked if he believed that the solicitor unduly vouched for her witnesses, PCR counsel replied:

> No. I think she was walking a line which she often does and I've caught her at it before, but on this particular case I don't think she did. I don't think she unduly vouched for them. She was just recalling her testimony or the testimony of the witnesses as she recalled them, and it was correct, as far as I could tell.

[ECF No. 16-6 at 73].

The PCR court denied the claim, noting that it could not find any evidence in the record that the solicitor vouched for her witnesses. [ECF No. 16-6 at 102]. The PCR court further found that a review of solicitor's closing argument for incidents where the solicitor "vouched for her witnesses" did not reflect that the solicitor's closing arguments were such that Petitioner's trial counsel would have been required to object. *Id.*

In examining claims pertaining to improper comments by a prosecutor, "[t]he relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). However, the *Darden* Court noted that "it is not enough that the remarks were undesirable or even universally condemned." *Id.* (internal quotation omitted).

Having reviewed the record and considered the weight of the evidence and the extent of these comments, the court finds that the solicitor's comments did not render Petitioner's trial fundamentally unfair. Petitioner has failed to establish that there is a reasonable probability that the result of the proceeding would have been different if trial counsel had objected. *Strickland,* 466 U.S. at 694. Therefore, Petitioner cannot establish that trial counsel was constitutionally ineffective in failing to object during cross examination and closing arguments. Moreover, Petitioner has not shown that the state court's analysis of this issue misapplied clearly established federal law or, even if there was an error, that it was unreasonable. *See Williams v. Taylor,* 529 U.S. at 410. Based on the foregoing, the undersigned recommends that Respondent be granted summary judgment on Ground Ten.

### 3.    Conflict of Interest

In Ground Eight, Petitioner argues that his trial counsel was ineffective for failing to inform him that he had previously represented Bates and his mother in separate legal proceedings. [ECF No. 1-2 at 8].

At the PCR hearing, Petitioner testified that he wanted to call Ms. Brenda Bates as a witness at his trial, but she was not called. [ECF No. 16-6 at 25]. He testified that his trial counsel did not tell him that he had represented Shawn Bates, or his mother, Brenda Bates, and if he would have known this information, he would not have wanted trial counsel to continue to represent him. *Id.* at 26–27.  Petitioner stated:

> . . . I don't believe he could have had his whole heart in my case knowing that he had represented the deceased and the mother, too, and I felt as if her testimony would have helped me in the trial, and I never got it.
>
> . . .
>
> I believe that he would have felt as if he didn't want to vigorously ask questions to [Ms. Bates] because of the son and I think that hurt me in my trial by him not being able to call her to the stand. I felt as if that he thought that if he did that it would, you know, be a conflict there, and now that I know that he represent them I know it would have been a conflict, and that's how I felt about it.

*Id.* at 27–28.

The PCR court denied the claim, as follows:

> Finally, Applicant claims Trial Counsel had a conflict of interest and should not have represented Applicant or at least should have informed Applicant of his prior representation of the victim and the victim's mother.
>
> Even though the victim is dead, any duty of confidentiality from Trial Counsel to victim survives. Here, other than the bald assertion that this prior representation created a conflict, the record does not show any conflict existed which would prohibit Trial Counsel from representing Applicant at his trial for the murder of Trial Counsel's former client. Nothing indicates the victim was a client at the time of his death. As with the witness and charge issue, Applicant has presented no evidence from which the Court could analyze what is here just an abstract complaint.
>
> As to victim's mother, Trial Counsel was not actively representing her at the time of victim's death or at the time of trial. Trial Counsel testified in his opinion that calling the victim's mother would not have been "too

good." Applicant did not call this individual to testify at his PCR hearing. As with the victim, all that is here is a bald allegation of a conflict.

For Applicant to prevail on a claimed conflict of interest, he must show that counsel has actively represented conflicting interest. The mere possibility of a conflict of interest is insufficient to impugn a criminal conviction. Langford v. State, 310 S.C. 357, 426 S.E.2d 793 (1993).

The Rules of Professional Conduct have no bearing on the constitutionality of a criminal conviction. Langford, *supra*.

In the instant case, Applicant has failed to show to the Court that Trial Counsel owed any duty at the time of his trial that would be adverse to Applicant. Thomas v. State, 346 S.C. 140 551 S.E.2d 254, (2001).

Applicant has not shown that any conflict of interest actually existed as claimed and therefore prejudice is not presumed as to Trial Counsel's representation of Applicant. Duncan v. State, 281 S.C. 435, 315 S.E.2d 809 (1984).

[ECF No. 16-7 at 1–2].

In his response, Petitioner alleges that he wanted witnesses called, including Brenda Bates, to show Bates's violent history. [ECF No. 25-8]. Petitioner also argues that he wanted Ms. Bates as a witness to show that Ayers was lying about being grabbed by Petitioner in Ms. Bates's home. *Id.*

Petitioner has failed to demonstrate that he suffered prejudice because of trial counsel's prior representation of Shawn Bates and his mother, Brenda Bates. Petitioner failed to offer a statement from any witnesses, including Ms. Bates, that demonstrates that these witnesses would have offered positive testimony for Petitioner. *See Beaer v. Thompson*, 93 F.3d 1186, 1195 (4th Cir. 1996) (finding that an allegation of inadequate investigation does not warrant habeas relief absent a proffer of what favorable evidence or testimony would have been produced). The undersigned finds that the state court's

rejection of Petitioner's allegations was not contrary to and did not involve an unreasonable application of federal law, see § 2254(d)(1). Therefore, the undersigned recommends that Ground Eight be dismissed.

### 4.    *Jackson v. Denno* hearing

In Ground Six, Petitioner argues that his trial counsel was ineffective for failing to request a hearing pursuant to *Jackson v. Denno,* 378 U.S. 368 (1964) before the State introduced Chief Chastain as a rebuttal witness at the end of trial. [ECF No. 1-2 at 6]. Petitioner argues that a *Jackson v. Denno* hearing would have shown that Chief Chastain's testimony was not credible and that Petitioner never gave a written or taped statement to the police. [ECF No. 25-2 at 4]. Petitioner also claims that a *Jackson v. Denno* hearing was needed to show that he did not give a voluntary confession. *Id.* at 5.

During the PCR hearing, trial counsel testified that there was no need for a *Jackson v. Denno* hearing. [ECF No. 16-6 at 69]. Trial counsel testified that he showed Petitioner a copy of a transcript that showed the substance of the officer's anticipated testimony. *Id.*

The PCR court found that "trial counsel was correct in concluding that there was no need for a <u>Jackson v. Denno</u> hearing." *Id.* at 100.

Pursuant to the Supreme Court's holding in *Jackson v. Denno*, when a defendant objects to the introduction of his statement as involuntary, due process requires a trial judge to make an independent determination that the statement is voluntary before permitting the statement to be heard by the jury. Petitioner cannot establish that there was a factual basis for his trial counsel to request a *Jackson v. Denno* hearing and

therefore fails to show that his trial counsel was ineffective. Petitioner does not offer any evidence that his statement was coerced, unknowing, or involuntary, nor has he made any allegations that Chief Chastain made promises or threats or trickery in questioning Petitioner. Petitioner's arguments in support of this ground reveal that his real issue is not with the voluntariness of his statements, but with the credibility of Chief Chastain's testimony about Petitioner's statements. Accordingly, it would have been unreasonable for trial counsel to argue that Petitioner's statement was involuntary, when the true issue involved a determination of credibility. Petitioner has not shown that the state court's analysis of this issue misapplied clearly established federal law, or even if there were an error, that it was unreasonable. *See Williams,* 529 U.S. at 410. Based on the foregoing, the undersigned recommends that Ground Six be dismissed.

III.    Conclusion and Recommendation

For the foregoing reasons, the undersigned recommends that Respondent's motion for summary judgment [ECF No. 17] be granted and the petition be dismissed with prejudice.

IT IS SO RECOMMENDED.


*Shiva V. Hodges*

January 29, 2015                                    Shiva V. Hodges
Columbia, South Carolina                   United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).